IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs January 29, 2025

**STATE OF TENNESSEE v. DAVID KAISER**

**Appeal from the Criminal Court for Knox County**
**No. 127056   Steven W. Sword, Judge**

_____

**No. E2024-00606-CCA-R3-CD**

_____

The Defendant, David Kaiser, appeals from his guilty pleaded convictions for two counts of theft of property valued at $10,000 or more but less than $60,000, a Class C felony; burglary, a Class D felony; theft of property valued at $2,500 or more but less than $10,000, a Class D felony; and misdemeanor drug possession, a Class A misdemeanor. *See* T.C.A. §§ 39-14-103 (2018) (theft of property); 39-14-105 (2018) (grading of theft); 39-13-1002 (Supp. 2021) (burglary); 39-17-418 (2018) (misdemeanor drug possession). The Defendant agreed to an effective ten-year sentence as a Range II offender, with the manner of service to be determined by the trial court. On appeal, the Defendant contends that the court erred by denying his request for alternative sentencing. We affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

ROBERT H. MONTGOMERY, JR., J., delivered the opinion of the court, in which TOM GREENHOLTZ and KYLE A. HIXSON, JJ., joined.

Amber K. Spelman, Knoxville, Tennessee, for the Appellant, David Kaiser.

Jonathan Skrmetti, Attorney General and Reporter; Ronald L. Coleman, Senior Assistant Attorney General; Charme P. Allen, District Attorney General; Jeannine Guzolek, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

The Defendant's convictions relate to multiple thefts in November 2023, and to an unrelated May 2023 traffic stop. On March 5, 2024, the Defendant was charged by information with two counts of theft of property valued at $10,000 or more but less than $60,000, burglary, theft of property valued at $2,500 or more but less than $10,000, and misdemeanor drug possession. On March 5, 2024, the Defendant pleaded guilty as

charged. Pursuant to the plea agreement, the Defendant received two six-year sentences for each theft of property valued at $10,000 or more but less than $60,000, four years for burglary, four years for theft of property valued at $2,500 or more but less than $10,000, and one day to serve for misdemeanor drug possession. The Defendant received partial consecutive service, for an effective ten-year sentence.

At the guilty plea hearing, the parties stipulated to the following facts:

> Between the dates of November 11th, 2023, and November 13th, 2023, this defendant and two co-offenders went to Rackley Roofing . . . . The business had a fenced-in lot, which contained several vehicles and storage buildings that were owned by Rackley Roofing.

> This defendant and his co-offenders entered the property on five separate occasions and took various tools from the business with an approximate value of $40,993. On one of the occasions, this defendant took a 2014 Chevy Silverado, which was valued at approximately $8,000.

> The burglaries and thefts were all captured on surveillance camera. On each occasion, the business was not open to the public. Victim Leinenweaver is the representative for Rackley Roofing and did not give this defendant permission or authority to enter or remove any of the business's property.

> On or about February 5th, 2024, . . . officers were armed with knowledge that this defendant had multiple outstanding warrants and learned the defendant was staying at a residence . . . . Police responded and placed the defendant into custody.

> Police entered the residence and observed a Honda motorcycle, which the victim had previously reported stolen on November 12th, 2023 . . . . The victim did not give the defendant permission or authority to possess or use his motorcycle. The motorcycle was valued at approximately $15,000.

> On or about November 8th, 2023, this defendant and a co-offender went to Waveguide . . . . The business had a fenced-in lot, which the defendant and co-defendant entered and took various tools, which were valued at $3,300. All this was captured on video surveillance. The representative of Waveguide, Travis Heidle, did not give this defendant permission or authority to enter or remove those items.

On or about May 2nd, 2023, police initiated a traffic stop . . . . The defendant was the passenger in the vehicle. Police observed the defendant push a crack pipe off his lap. Officers observed white rocks on a phone in the center console and on the passenger seat, which purported to be 2.2 grams of crack cocaine.

The defendant admitted to purchasing the crack cocaine, that he had smoked some earlier, and was planning on smoking some more later.

At the April 19, 2024 sentencing hearing, the presentence report was received as an exhibit. The report reflects that the fifty-one-year-old Defendant had previous convictions for two counts of felony forgery, three counts of misdemeanor forgery, attempted forgery, three counts of misdemeanor theft, felony theft, possession of drug paraphernalia, two counts of shoplifting, "license to be carried/exhibited on demand," two counts of misdemeanor drug possession, two counts of possession of burglary tools, and vandalism. The convictions occurred between 1998 and 2015. At the time of the presentence investigation, the Defendant had pending criminal charges in a neighboring county for speeding and driving while his license was suspended. The Defendant had three previous probation revocations, which were related to the Defendant's having been arrested for new criminal charges, failing to report to his probation officer, and absconding from supervision. While in the custody of the Tennessee Department of Correction, the Defendant was disciplined for refusing cell assignments, defiance, failure to report, refusing to participate, larceny, and interference with an officer's duties. While in the Knox County detention center, the Defendant was disciplined for horseplay, refusing a lawful order, tampering with a food cart, a housekeeping violation, theft, posted operation rule violation, and possession or distribution of medication.

The presentence report reflects that the Defendant left high school in the eleventh grade. He reported having excellent mental and physical health and drinking alcohol from age twenty-one until 2014. He reported using marijuana rarely at age thirty and using cocaine from 2003 to 2024. He reported having a good childhood. He stated that he had been approved to live at "Jellinek" beginning on April 19, 2024. The Defendant reported previous employment at two restaurants and a clothing store between 2019 and 2020. The risks and needs assessment showed a score of "high (property)" and recommended enhanced probation supervision.

The trial court considered the presentence report, arguments of counsel, the principles of sentencing, and the nature and characteristics of the offenses. The court reviewed the Defendant's previous criminal history and found that the Defendant had numerous convictions for property-related offenses. The court found that although the Defendant had received the benefit of probation for previous convictions, his probation had been revoked.

-3-

The trial court found that the present thefts occurred on multiple dates and that the Defendant was not a favorable candidate for probation because "this is his third conviction of a felony offense with a separate period of incarceration." The court noted the risk and needs assessment resulted in a high risk for property crimes but not for substance use disorder. The court determined that a period of confinement was necessary to protect society by restraining the Defendant because of his long criminal history and noted that the Defendant had "left a pretty large wake of victims behind him." The court, likewise, found that measures less restrictive than confinement had been applied unsuccessfully and frequently to the Defendant based upon his failed attempts at probation. The court noted the Defendant's cocaine use but found that the drug use was not the "the only thing driving his theft behavior." The court determined that probation was not suitable based upon the Defendant's long criminal history, his failed attempts at probation, and the number of victims who would likely never receive restitution. The court, likewise, declined to order split confinement. The court determined that confinement was the "only appropriate sentence." This appeal followed.

The Defendant contends that the trial court abused its discretion by denying his request for alternative sentencing. The State responds that the court considered all of the principles of sentencing and did not abuse its discretion by ordering the Defendant to serve his sentence. We agree with the State.

This court reviews challenges to the manner of service of a sentence within the appropriate sentence range "under an abuse of discretion standard with a 'presumption of reasonableness.'" *State v. Bise*, 380 S.W.3d 682, 708 (Tenn. 2012). A trial court must consider any evidence received at the trial and sentencing hearing, the presentence report, the principles of sentencing, counsel's arguments as to sentencing alternatives, the nature and characteristics of the criminal conduct, any mitigating or statutory enhancement factors, statistical information provided by the AOC as to sentencing practices for similar offenses in Tennessee, any statement that the defendant made on his own behalf, the potential for rehabilitation or treatment, and the result of the validated risk and needs assessment. T.C.A. §§ 40-35-103 (2019), -210 (2019); *State v. Ashby*, 823 S.W.2d 166, 168 (Tenn. 1991); *State v. Moss*, 727 S.W.2d 229, 236 (Tenn. 1986); *State v. Taylor*, 744 S.W.2d 919 (Tenn. Crim. App. 1987)); *see* T.C.A. § 40-35-102 (2019). The standard of review for questions related to probation or any other alternative sentence is an abuse of discretion with a presumption of reasonableness. *State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012). Generally, probation is available to a defendant sentenced to ten years or less. T.C.A. § 40-35-303(a) (Supp. 2022). The burden of establishing suitability for probation rests with a defendant, who must demonstrate that probation will "'subserve the ends of justice and the best interest of both the public and the defendant.'" *State v. Souder*, 105 S.W.3d 602, 607 (Tenn. Crim. App. 2002) (quoting *State v. Dykes*, 803 S.W.2d 250, 259 (Tenn. Crim. App. 1990)); *see* T.C.A. § 40-35-303(b); *State v. Carter*, 254 S.W.3d 335, 347 (Tenn. 2008).

A sentence is based upon "the nature of the offense and the totality of the circumstances," including a defendant's background. *Ashby*, 823 S.W.2d at 168; *see State v. Trotter*, 201 S.W.3d 651, 653 (Tenn. 2006). A trial court is permitted to sentence a defendant who otherwise qualifies for probation or alternative sentencing to incarceration when:

> (A) [c]onfinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
>
> (B) [c]onfinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
>
> (C) [m]easures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]

T.C.A. § 40-35-103(1)(A)-(C) (2019); *see Trotter*, 201 S.W.3d at 654. A trial court must consider (1) the defendant's amenability to correction, (2) the circumstances of the offense, (3) the defendant's criminal record, (4) the defendant's social history, (5) the defendant's physical and mental health, and (6) the deterrence value to the defendant and others. *See State v. Trent*, 533 S.W.3d 282, 291 (Tenn. 2017) (concluding that the same factors used to determine whether to impose judicial diversion are applicable in determining whether to grant probation); *see also State v. Electroplating*, 990 S.W.2d 211, 229 (Tenn. Crim. App. 1998); *State v. Parker*, 932 S.W.2d 945, 958 (Tenn. Crim. App. 1996).

We conclude that the trial court did not abuse its discretion by ordering the Defendant to serve his ten-year sentence in confinement. The court determined that confinement was necessary based upon the Defendant's previous criminal history and his failed attempts at serving a sentence on probation. *See* T.C.A. § 40-35-103(1)(A), (C). The Defendant's previous criminal history spanned approximately seventeen years, during which time he was convicted of two counts of felony forgery and one count of felony theft and was sentenced to incarceration. Likewise, the Defendant had multiple misdemeanor convictions for theft- and forgery-related offenses, and his probation was revoked multiple times in previous cases. The presentence report reflects that the probation revocations were related to the Defendant's having been arrested for new criminal charges, failing to report to his probation officer, and absconding from supervision. The Defendant was a Range II, multiple offender with nineteen previous convictions, and as a result, the court determined that the Defendant was not a suitable candidate for probation. *See id*. § 40-35-102(6)(A) ("[A] defendant who is being sentenced for a third or subsequent felony conviction involving separate periods of incarceration or supervision shall not be considered a favorable candidate for alternative sentencing[.]"). The record supports the trial court's determination to order confinement because of the need to protect society from the

Defendant who has a long history of criminal conduct and because measures less restrictive than confinement had been applied unsuccessfully to the Defendant. The court did not abuse its discretion by denying the Defendant's request for alternative sentencing. The Defendant is not entitled to relief.

In consideration of the foregoing and the record as a whole, the judgments of the trial court are affirmed.

**s/ Robert H. Montgomery, Jr.**
ROBERT H. MONTGOMERY, JR., JUDGE